Submitted May 18, reversed September 8, 1965

PROVIDENCE MEMORIAL ASSOCIATION *v.*
THE PROVIDENCE MISSIONARY
BAPTIST CHURCH ET AL
405 P. 2d 545

Goode, Goode & Altman, Albany, for appellants.

Willis, Kyle & Emmons, Albany, for respondents.

Before PERRY, Presiding Justice, and SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

PERRY, J.

This is a suit in equity brought by the plaintiff to enforce a restriction against the cutting of trees upon real property, the restriction being contained in a deed conveying the real property to the defendants' predecessor in title.

From a judgment sustaining the covenant and permanently restraining the defendants from cutting or removing the trees on their real property, defendants appeal.

The evidence discloses that in a rural area of Linn county, Oregon, a Baptist church was organized as early as 1858, and, from the time of the church's organization through 1916, the church received several grants of contiguous parcels of real property. In 1894 the church was incorporated in the state of Oregon with the corporate name of "The Providence Missionary Baptist Church." A church was built upon a portion of the property and a portion of the property was used for cemetery purposes.

In 1952, the membership in the church having de-

clined to eight in number, a meeting was had between a committee of the First Baptist Church of Albany and the Providence church board "for the purpose of discussing the transfer of the Providence church property to the First Baptist Church (Albany)." The minutes of the meeting disclose that the First Baptist Church required, first, the establishment of a trust fund in which all funds from the Providence church were to be kept for the upkeep of the church; second, that two-thirds of the members must vote in writing in favor of the transfer. The minutes also disclose that if the transfer was made the First Baptist Church promised to keep the property under Baptist Church control.

Subsequently, two-thirds of the members of the Providence church voted to convey the church property to the First Baptist Church, and on May 20, 1953, that portion of the property not used for cemetery purposes was conveyed to the First Baptist Church in a deed which contains the following reservation:

"Subject however, and reserving therefrom to the public and the Providence Memorial Association, an Oregon Corporation, the right of ingress and egress on, over and across the above described property on the route now used for such purposes and occupied by the road from the County Road to the property owned by said Providence Memorial Association and used as a Cemetery, also and subject to the restriction that no standing trees or timber shall be cut from said property unless they become danger trees and any proceeds received from the sale of such trees, even and when so cut and removed, shall be placed in the Joab Powell Trust Fund. Said property shall be used for church purposes and shall be retained as a Baptist Testimony forever."

In 1962 the First Baptist Church of Albany reconveyed this same property, without the restriction, to the defendant The Providence Missionary Baptist Church.

In 1934 a cemetery association was formed for the purpose of maintaining the cemetery upon a portion of the Providence church land. The membership in this association consisted of members of the church and others who were interested in the maintenance and care of the cemetery. On April 7, 1953, the defendant The Providence Missionary Baptist Church conveyed title to that portion of its property used for cemetery purposes to the plaintiff cemetery association, the deed providing as follows:

> "* * * subject to the rights of the public in the use of the County Road, together with a right of ingress and egress thereto on, over and across the church property upon which the Providence Missionary Baptist Church is now located, on the route now used for such purposes and occupied by said road."

Benton Arnold, who executed each of the above deeds on behalf of The Providence Missionary Baptist Church, and who was at that time also a member of the board of the cemetery association, testified that the reason the church property was divided and a portion conveyed to the First Baptist Church of Albany and a portion to the cemetery association was because the First Baptist Church would not accept the cemetery portion. He also testified as follows:

> "Q * * * Why was the restriction about the trees put in there?
> "A Well, the restriction for the trees, we talked it over and we decided that we wanted those trees maintained there to beautify the property all around there and also give shade.

"Q And was that for the benefit of the cemetery as well as the church?

"A I don't know why it wouldn't be.

"Q Well, was it?

"A That's the way it was intended.

"* * * * *

"Q Now, the deed to the cemetery association you had no restrictions in it of this type, did you?

"A Well, there isn't about the trees as well as I remember it.

"Q Now, as far as the other deed is concerned, that's the one to the First Baptist Church—well, let me go back to the time that you deeded the property to the cemetery association. At the time you deeded the property to the cemetery association did you have an agreement with them that you would leave the trees?

"A No.

"Q You actually didn't even consult with them about it, did you?

"A No.

"Q Your boards didn't meet together? You didn't ask their advice or anything about the matter, did you?

"A All this was done when the board was together when all that was done.

"Q Were you actually a member of both boards at the time?

"A Yes, I think I was.

"Q I know it's difficult to do if you are on both boards to remember how each of them go, but try to restrict your thinking to the church board. Now, isn't it a fact that as far as the church board was concerned, you made a decision that you wanted the property to go to the First Baptist Church so they could save it for Baptist purposes?

"A Not me. The church did.

"Q When I'm saying you, I mean the board and you were part of that board?

"A That's right.

"Q And this matter about the trees, isn't it a fact that it actually came up later on in your discussions near the end at the suggestion of your brother Lonard?

"A Well, he spoke about it, yes.

"Q And wasn't his idea that the trees presented quite a commercial benefit if somebody wanted to harvest them and you wanted to keep the trees from being cut for commercial purposes and the restrictions?

"A Well, there would be a value there.

"Q And you wanted to keep them from being cut for commercial purposes?

"A That's right.

"Q And that's the reason why the restrictions was put on there, so somebody wouldn't come and cut them off and sell them?

"A That's right.

"Q Going back again. When I say you, I mean the hat that you're wearing as a church board member. You didn't consult with the cemetery board about what you were going to do did you?

"A (Shaking head.)

"Q You didn't seek their advice and you weren't given any, were you?

"A No.

"Q There were no agreements whatsoever between the two boards as official agreements about trees?

"A Not that I know of."

Since it was neither a promisor nor a promisee in the deed of conveyance between the churches, the plaintiff contends it has a right to enforce the covenant in the prior conveyance to the First Baptist

Church of Albany under the doctrine of a third party beneficiary. *Rodgers et ux v. Reimann et ux,* 227 Or 62, 361 P2d 101.

■ The plaintiff was a prior purchaser of land from the common grantor. It, therefore, must establish that the covenant contained in the subsequent deed to the First Baptist Church of Albany was placed therein as the result of an agreement between those parties for the benefit of the plaintiff at the time the transfer of title was made. 2 American Law of Property 422, § 9.30.

■ It is true that the evidence discloses that the retention of the trees on the property conveyed to the First Baptist Church of Albany would equally benefit both properties, but such fact alone is insufficient to permit such a beneficiary to enforce performance of the covenant. 1 Restatement 176, Contracts § 147.

■ It must also appear from the terms of the subsequent conveyance, in view of the circumstances surrounding that transaction, that there was a purpose to make "a gift to * * * or to confer" some right upon the plaintiff as against the First Baptist Church of Albany. 1 Restatement 151, Contracts § 133. .

There is no language in the reservation in the conveyance by the defendant church to the First Baptist Church of Albany, insofar as the cutting of the trees is concerned, that would suggest an intention by the defendant church to grant a benefit to the plaintiff. It appears that the benefit was for the preservation of the premises conveyed for the "Baptist Testimony" or purposes of the Baptist Church.

■ There is, likewise, no evidence of circumstances existing at the time of the conveyance by the defendant church to the First Baptist Church which would imply there was any agreement that the restrictions as to

cutting of trees was to benefit the plaintiff, such as may be found when the evidence discloses that the land was sold in parcels by a common grantor under a general plan for the development of the whole. 2 American Law of Property 423, § 9.30; 5 Restatement 3246, Property, Servitudes § 541.

The decree of the trial court must, therefore, be reversed with instructions to dismiss plaintiff's suit, neither party to recover costs.